THE STATE *ex rel.* HALPIN v. POWERS.

1. **Certiorari**: PETITION: PLEADING. A petition for a *certiorari* in the absence of a formal assignment of errors in the record sought to be reviewed, may be regarded as in the nature of an assignment of errors, and to this extent will be treated as a pleading in the cause, but the court cannot be called upon to consider any question raised by the petition unless it is presented by the record of the inferior tribunal.

2 **Taxation**: ANNUAL ASSESSMENT. Under the charter of the city and the legislation of the State, *annual* assessments of real estate in the city of St. Louis are proper.

*Appeal from St. Louis Court of Appeals.*

Proceeding by *certiorari* to bring up the record of the board of equalization of the city of St. Louis. The petition alleged that in 1876, certain described real estate of relator, in said city, was valued for taxation at a specific sum; that under the law of this State said real estate was

liable to be assessed once in two years only, and that being legally and properly assessed in 1876, it was not again subject to assessment for taxes till the year 1878, yet, notwithstanding this fact, the assessor of the city of St. Louis did, without any authority of law whatever, list, assess and return the said real estate in the year 1877, for the basis of taxation in the year 1878, and the taxes for 1878 have been extended on the assessment so made in 1877, and a higher valuation is placed on the same than was placed thereon in the assessment of 1876, and the relator appealed from the said assessment of 1877, to the board of equalization of the city of St. Louis, whose duty it was by law to rectify and correct all mistakes, &c., and said board reduced to some extent the illegal and unauthorized assessment of 1877, but left the same above the assessment of 1876, and refused to restore it to the assessment of the latter year, &c., wherefore a writ of *certiorari* is prayed, commanding respondents to return into this court the proceedings aforesaid, &c.

The respondents duly made a return and answer setting forth their powers under the law, and the nature of the appeal of relator to them, and that it did not involve the question as to the validity of the annual assessment of real estate in the city of St. Louis, nor was such question presented to them, nor did they decide such question, nor have any power so to do, and a copy of the record of respondents' action on relator's appeal was incorporated in the return, showing the only question presented by said appeal and determined by respondents to have been the question of the cash value of relator's said real estate upon August 1st, 1877, and upon which question relief was afforded to relator by respondents, but not to the extent demanded by him.

The relator demurred to the return on the ground that, under the constitution and laws of this State, there could be no assessment of real estate in St. Louis in 1877.

· *R. F. Wingate* and *Wagner, Dyer & Emmons* for relator.

*Certiorari* brings up the whole record, and the court will pass upon the validity of the law under which respondents acted. *Milwaukee Town Co., v. Schubal*, 20 Wis. 594; *State, &c., v. St. Louis Co.*, 47 Mo. 594. The assessment was illegal.

*J. L. Smith*, Attorney-General, and *Leverett Bell* for respondents.

The question whether real estate in the city of St. Louis can be annually valued for the purposes of taxation, does not arise upon this record, because this question was not before respondents nor decided by them; therefore cannot, in this proceeding, review it. *Hannibal, &c., R. R. Co. v. Morton*, 27 Mo. 317; *State ex rel. Lathrop v. Dowling*, 50 Mo. 134; *Rogers v. County Court of Clinton Co.*, 60 Mo. 101; *Hannibal, &c., R. R. Co. v. State Board of Equal.*, 64 Mo. 294. In any event, however, under the laws of this State, the assessment, as made, was proper. The action of the officers will not be set aside if the question is one of doubt. Cooley's Con. Lim., *68; *Union Ins. Co. v. Hoge*, 21 How. 35, 66; *State v. Mayhew*, 2 Gill (Md.) 487, 497; *Moers v. Reading*, 21 Pa. St. 188, 201; *U. S. v. Gilmore*, 8 Wall. 330; *Lafayette R. R. v. Geiger* 34 Ind. 185, 203.

HOUGH, J.—The assessor in the city of St. Louis assessed the petitioner's real estate in the year 1877 for the taxes of 1878. On appeal to the board of equalization of the city of St. Louis, the petitioner sought a reduction of the valuation, because, as he alleged, it was greater than that fixed upon it in former years, and greater than its actual cash value. The valuation was reduced ten per cent. The petitioner now brings this assessment before us, and alleges that the same is illegal and void; that under the law real estate can only be assessed biennially, that the valuation of the petitioner's property in 1876, the time fixed by

law for the biennial assessment, should have been adopted as the basis of taxation for 1877, and that said valuation could not be changed by the board of equalization.

In a proceeding by *certiorari* in this court, the petition for the writ may be regarded as in the nature of an assign-ment of errors on the record sought to be reviewed, in the absence of any more formal assignment of errors after the record is returned to this court. Further than this the petition is not to be viewed as a pleading in the cause. The record of the inferior tri-bunal is to be examined by us just as it would be, if it could be and were brought before us by a writ of error or an appeal. The record brought here may be amended, as in other cases, by the stipulation of the parties, but no issues of law or fact are to be made by the petition or writ, and return, to be tried by us, as in proceedings by mandamus or *quo warranto*. *State ex rel. Lathrop v. Dowling*, 50 Mo. 134.

1. CERTIORARI: pe-tition: pleading.

The only question is, is there error in the record of the inferior tribunal brought before us by the writ? As the assessment record returned in the present proceeding does not show what the valuation of the petitioner's property was in the year 1876, the year in which it is claimed that the biennial assessment is, by law, required to be made else-where in the State, it does not appear that the petitioner has been damaged, and we might, therefore, decline to interfere with the action of the board of equalization on that ground; but as the question sought to be presented has been stated in argument to be one of great importance to the State, as well as the tax-payers in the city of St. Louis, we will pro-ceed to inquire whether annual assessments of real estate in the city of St. Louis are allowed by law.

The 20th section of article 9 of the constitution, which provided for the separation of the city from the county, authorized the people of the city to adopt a charter for their government which should be in harmony with and subject to the constitution and

2. TAXATION: an-nual assessment.

laws of Missouri, and should take the place of and super-
sede the charter of St. Louis and all amendments thereof.
The 23rd section of the same article provides that the city
of St. Louis shall collect the State revenue in the same
manner as if it were a county.   As the city government, au-
thorized by the constitution for the city of St. Louis, is
entirely different in its organization from that of the coun-
ties, and as the duty of collecting the State revenue which
devolved upon the county of St. Louis under the general
law, was thereafter to be performed by the city of St.
Louis, it became necessary to provide in the charter the
requisite municipal agencies for the performance of that
duty.   Proper officers were to be designated, the mode of
their selection prescribed, and the duties which were pre-
viously performed by the officials designated in the general
law were, by express enactment, to be imposed upon them.
The 1st section in the city charter on this subject declares
that the city of St. Louis shall be assessed in accordance
with the general law.   Subsequent provisions require the
annual assessment of real property within the city, and
create a city board of equalization, which is required to
meet annually, and is authorized to adjust, correct and
equalize the valuation of real property so assessed, and to
determine, as far as possible, whether such property has
been assessed at its true cash value, and in just proportion
to the assessed value of other property in the city simi-
larly situated, and to increase or diminish the assessment
accordingly.   These requirements are substantially the
same as those of the general revenue law relating to St.
Louis county, in force at the time of the adoption of the
scheme and charter, and as they clearly contemplate the
annual valuation of real property in St. Louis, it is con-
tended that they are not in harmony with the 48th section
of the general law, and are, therefore, inoperative.   Sec-
tion 48 is as follows:   "Real estate shall be assessed at the
assessment which shall commence on the 1st day of Au-
gust, 1872, and shall only be required to be assessed every

two years thereafter. Each assessment of real estate so made shall be the basis of taxation on the same for the two years next succeeding." This section first made its appearance in its present shape in the revenue law passed March 30th, 1872.

The revenue law as contained in the general statutes of 1865, required the county boards of equalization, including the board of equalization for the county of St. Louis, to meet annually, and, at such meetings they were authorized to increase or diminish the assessment of real property so as to make it conform to its true value. Gen. Stat., p. 97, §§ 13, 14, 15; p. 108, § 65. In the year 1870 an act was passed, not as an amendment, in terms, of any existing law, but as an independent statute, entitled, "An act in relation to the assessment and collection of revenue on real estate, and providing that taxes on real estate shall be a lien on the same, and for the sale and enforcement of such liens." The first section of that act is as follows: "The assessment of real estate, made for the year 1870, shall be the assessment thereof until the 1st Monday in July, 1871, between which last named time and the 1st day of October next thereafter, and in like time every two years thereafter, all real estate subject to taxation shall be assessed and listed numerically, as far as the same can be done as now provided by law; but nothing herein contained shall be so construed as to affect the right of any board of equalization, in pursuance of law, to increase or diminish the aggregate of such assessment, or the assessment of any tract or lot, or of any county court or other tribunal by law thereto authorized, to add to such lists all tracts and lots of land not asssessed, or to strike from such list any tract or lot improperly assessed. Acts 1870, p. 114. As this statute was an independent enactment, it might have been thought, but for the qualification contained in the foregoing section, that it was the purpose of the law to deprive county boards of equalization of all power to interfere in any manner with the biennial assess-

ments therein provided for, and hence out of abundant caution their right to annually revise such assessments was expressly recognized.   In 1872 the entire revenue law of the State, comprising at that time many detached and fragmentary enactments, was revised and re-enacted in a single statute, containing section 48 above quoted, and retaining the provisions of the general statute of 1865, authorizing the county boards of equalization, and the board of equalization of the county of St. Louis, to increase and diminish the assessment of real property at their annual meetings. Acts 1872, p. 87, §§ 14, 15, 16; p. 99, § 80 (79).   The retention of these sections, defining the powers of the county board of equalization, demonstrates the purpose of the Legislature to leave the law, in this particular, just as it stood after the passage of the first section of the act of 1870, and being embodied in the same act with section 48, there was no necessity for adding to said section the qualification annexed to its prototype in section 1 of the act of 1870.   They are to be construed together, and force and effect are to be given to both.   So that under the act of 1872 the biennial assessment was subject to revision by the county boards of equalization, not only during the year for which it was made, but in the succeeding year also By the act of April 28th, 1877, a most material change was wrought in the law relating to the assessment of real property.   By the 3rd section of that act section 28 of the act of March 30th, 1872, was so amended as to require every tax-payer to furnish annually to the assessor, in addition to his personal property, a list of all his real estate and its value.   Session acts 1877, p. 377, § 3; and by the 5th section of said act, which amends section 31 of the act of 1872, the person making such list is required to make oath that it contains a true statement of all property owned by him and made taxable by the laws of the State, together with its value.   Before the passage of the act of 1877, the oath required by section 31 of the act of 1872 was, that the list returned was a true list only of all per-

sonal property owned by the person making the same. It would seem, therefore, that the act of 1877, by requiring an annual return of real property and its value to be made to the assessor, accomplished the virtual repeal of section 48, providing for biennial assessments. This being so, the petitioner's property was properly assessed in the year 1877 for the taxes of 1878. As the construction here given to the general law has not perhaps been formally carried out in many portions of the State, it may be well in this connection to call attention to the 53rd section of the act of 1872, which is as follows: "No assessment of property or charges for taxes therein shall be considered illegal on account of any informality in making the assessment or in the tax list, or on account of the assessments not being made or completed within the time required by law."

Perceiving no error in the action of the board of equalization, the relief sought by the petitioner will be denied, and the writ dismissed. All concur.

WRIT DENIED.