THE STATE *ex rel*. BURDEN v. WALSH, *City Register*.

The City of St. Louis not a County: COLLECTOR: MARSHAL. The city of St. Louis, as constituted by the scheme of separation, is a city proper, and not a county; and the provisions of law which were in force before its adoption, requiring the election of a county collector and county marshal for the county of St. Louis, are not applicable to the city.

*Original Mandamus.*

*Peter E. Bland* for relator.

*Leverett Bell* for respondent.

HOUGH, J.—This is an application for a writ of mandamus to compel the respondent to issue to the relator a certificate of election, as collector of the revenue within the city of St. Louis.

The alternative writ recites that, at the general election held on the 5th day of November, 1878, in the city of St. Louis, in the State of Missouri, of which State the city of St. Louis is a political subdivision and a county, among other offices to be filled in the said city was the office of

collector of said county, and *ex officio* collector of said State within said county, and at such election the relator, William Burden, was a candidate, together with other candidates for the said office, and he received the highest number of and a majority of all the votes cast for the respective candidates for said office, and thereby was duly elected and chosen to the same; and the respondent was, and is, the register of said city, and did examine and cast up the votes given to each candidate for said office, as well as for other offices, and found that William Burden had received the highest number of votes given any candidate for said office, and it was the duty of respondent to issue to said William Burden a certificate of his election to said office, which, however, respondent refuses to do.

. The material portions of the respondent's return are as follows: Richard Walsh, register of the city of St. Louis, for his answer and return to the alternative writ of mandamus herein, says, that the city of St. Louis is a political subdivision of the State of Missouri, and is entitled the city of St. Louis, and is not known or denominated as the county of St. Louis, nor is it a county in the State of Missouri, but the county of St. Louis is another and a different political subdivision of the State of Missouri, and comprises territory lying entirely without the limits of the city of St. Louis. * * The respondent further states that the office of collector of the county of St. Louis no longer exists in the city of St. Louis, the office of that name once existing having been abolished by law; that there is, however, an office of collector of the city of St. Louis created by the charter of said city, and the incumbent thereof, is by law charged wth the duty of collecting the State and school taxes and revenue, levied within the the limits of St. Louis, as well as the city taxes and revenue, and said office is, by law, required to be voted for at a general election held in said city on the first Tuesday in April, 1877, and every four years thereafter, and the term of said office, as provided by law, is four years, and at the election held on the

first Tuesday in April, 1877, one M. A. Rosenblatt was duly elected collector of the city of St. Louis, and duly qualified and was commissioned as collector, and entered upon the duties of said office, and is now discharging the same, and the official term of said Rosenblatt, as collector, will expire when his successor, to be elected at the election on the first Tuesday in April, 1881, shall qualify. Wherefore, the respondent says the ballots cast for relator for collector at the November election, 1878, were mere nullities, and possessed no validity, and relator is not entitled to a certificate of election as prayed for herein, nor any certificate of election; and having fully answered, respondent prays to be dismissed with costs. To this return the relator has demurred.

We are, therefore, to determine whether there is any such office as county collector of the city of St. Louis. Presented in this form the question may seem to be paradoxically stated, but it is the precise question before us. The counsel for the relator contends that the city of St. Louis is not simply a municipal corporation, but a county corporate; that the constitution has worked no extinction of county functions within its limits, and that with the exception of the county court, which has been superseded by the municipal assembly, all the laws establishing judicial and executive officers in the old county of St. Louis, and the whole mechanism of the government of the old county still survives in the government of the county corporate named "the city of St. Louis;" that the names only have been changed, the officers and functions remaining as before; in short, that the city of St. Louis is in point of political organization the old county of St. Louis under a new name, and the residue of the old county is a new county with the old name. These views have been supported in an elaborate and ingenious argument, which has received our careful attention, and if the positions assumed are incorrect, it must be conceded that there are some general and important provisions of the constitution which

should be applicable to all the primary political subdivis-
ions of the State, which are not susceptible of easy and
perfect adaptation to the political entity created by the
special provisions relating to the city of St. Louis.

This is, doubtless, attributable to the fact shown by
the records of the convention which formed the constitu-
tion, that the provisions relating to the scheme and charter
were added to the body of that instrument after it was
mainly completed, and on the eve of adjournment, and that
critical revision of the language of the entire instrument,
which would have removed all apparent incongruities and
presented all its parts in complete and perfect harmony,
was never made. The general purpose of its framers, how-
ever, so far as the political status of the city of St. Louis
is concerned, will, on a careful examination of those clauses
bearing directly upon the separation of the city from the
county, be found to be to divest the city of all county gov-
ernment, and to withdraw it from the operation of many
of the acts of the General Assembly in force in the county
of St. Louis at the time of such separation. Of course the
general laws of the State relating to persons and property,
and regulating the administration of justice remained in
force after the separation as before, because the city still
remained a part of the State. But all special enactments
of the General Assembly relating to St. Louis county which
were inconsistent with the new order of things, were by
the terms of the constitution itself, repealed. § 20 art. 9.
So, also, the acts of the General Assembly relating to the
city of St. Louis, other than the charter and its amend-
ments which were superseded by the scheme and charter,
continued in force in the city of St. Louis notwithstanding
the separation, *ibid.*; and by the 24th section the territorial
jurisdiction of all courts of record was continued until
otherwise provided by law. This section expressly pro-
vides that " the county and city of St. Louis * *
shall continue to constitute the eighth judicial circuit."
The 23rd section of article 9, provides that "the city and

county of St. Louis shall be independent of each other. The city shall be exempt from all county taxation.        *
*        The city, as enlarged, shall be entitled to the same representation in the General Assembly, collect the State revenue and perform all other functions in relation to the State, in the same manner as if it were a county as in this constitution defined; and the residue of the county shall remain a legal county of the State of Missouri, under the name of the county of St. Louis."

The phraseology of this section is highly significant, and would seem to be conclusive of the question under discussion. Throughout this provision the word "city" is undoubtedly used in contradistinction to the word "county." The "city" and "county" are to be independent of each other. If the city was to become a county, and the residue of the county remain such, why declare that they should be independent of each other? Such a declaration was entirely superfluous, if both were to be counties. In that event, their independence of each other would result from the very nature of things; and a declaration that all the counties in the State are independent of each other would have been equally appropriate. It was the fact that the city was to be detached from the county without any county government being provided for it, and that fact only, which made it necessary to declare that the city and county were to be independent of each other. "The city shall be exempt from all county taxation;" that is, the city shall be separated from, and independent of, the county, and shall be exempt from all county taxation. If construed in the light of relator's argument, this clause would read, "The county called the city of St. Louis shall be exempt from all county taxation" An argument which sanctions such a construction cannot be sound. Again, if the city, as enlarged, was still a county, and the old county, why provide that it should be entitled to the same representation " as if it were a county?" If a county representation was already secured to it by the 2nd section of article

4. The obvious meaning of the constitution is, that although the city has neither the character nor the organization of a county, and is, therefore, not a county, still, having territory, population and property within its limits subject to taxation, it shall be entitled to the same representation as if it were a county; and the addition of the words " as in this constitution defined," does not, in our opinion, imply that the city of St. Louis is any other kind of a county. Again, The constitution provides that after the separation of the city from the county " the residue of the county shall remain a legal county,    *    *    under the name of the county of St. Louis." The words " residue of the county " evidently refer to the territory of the old county left after detaching that portion included within the city, and not to the character of the government of the city when so detached, and the clause plainly implies that a change of government was to be effected in that portion of the old territory which should be detached, as that which was left was to remain the county of St. Louis.

We think that the manifest purpose of the scheme of separation was to detach the territory comprised within the enlarged limits of the city of St. Louis, from the county of St. Louis, thereby leaving it a city proper, divested of all county government, the functions in relation to the State previously performed therein by the county government being transferred to the government of the city. But the character of the city of St. Louis, as a political subdivision of the State, is placed beyond all question by the 25th section of article 9, which is as follows: " Notwithstanding the provisions of this article the General Assembly shall have the same power over the city and county of St. Louis that it has over other cities and counties of this State." If this provision has any meaning whatever, it is that the city of St. Louis is in its nature and organization a city as other cities are, and not a county. If then the city is not a county, of course it cannot be the old county, and the residue called the county of St. Louis must represent the

old county, and the special laws relating to the county of
St. Louis not repealed by the scheme, must remain in force
over that territory, and not in the city of St. Louis, unless
continued in force there by some other provision of the
constitution.    There is no such provision relating to county
collector.    Furthermore, the 23rd section above quoted
which exempts the city from all county taxation, expressly
requires the city to collect the State revenue.    The city
can only act through the instrumentality of its own officers.
How, then, in the face of this provision, could a county
collector, who is not a city officer, and who constitutes no
part of the city government, collect the revenue of the
State?    It is not pretended that the county collector would
have any right to collect the city revenue; under the con-
stitution no county revenue can be collected; and he is
impliedly prohibited from collecting the revenue of the
State.    With these facts before us, we find it impossible to
conclude that the office of county collector has any existence
in the city of St. Louis.    Substantially the same view was
taken of this matter in the case of the *State ex rel. Halpin
v. Powers*, 68 Mo. 320.    The return of the respondent is
adjudged sufficient, and the writ will be dismissed.    All
concur.

WRIT DISMISSED.

Patrick D. Sage claiming to have been elected marshal of the county
of St. Louis at the same election at which Burden claimed to have been
elected collector, sued out a writ of mandamus against City Register
Walsh to compel him to issue to the said Sage a certificate of election.
The court, per HOUGH, J., said: This case stands on substantially the
same ground as that of the *State ex rel. Burden v. Walsh*, and our opinion
in that case is decisive of this.    The office of marshal of St. Louis county
does not exist in the city of St. Louis.    Its existence there would be in-
consistent with the scheme of separation.    The writ will, therefore, be
dismissed.