THE STATE *ex rel.* HARRIS V. LAUGHLIN.

1. **Courts**: ST. LOUIS COUNTY: CONSTITUTIONAL LAW. No provision of the constitution of 1875 is violated by those sections of the act of 1877, dividing the State into judicial circuits, which detach the new county of St. Louis as formed by the scheme and charter from the Eighth judicial circuit, and attach it to the Nineteenth. The result of this change was to withdraw the county of St. Louis from the

jurisdiction of the St. Louis criminal court, and to limit the juris-
diction of that court to the territory included in the city of St. Louis.
HENRY and HOUGH, JJ., dissenting.

2. **Constitutional Law :** RULES OF CONSTRUCTION. When the consti-
tutionality of a statute is to be determined, resort should not be
made to mere verbal criticisms, subtle distinctions, abstract reason-
ing or nice differences in the meaning of words. It will be pre-
sumed to be constitutional till the contrary plainly appears, and it
is only when it manifestly infringes some provision of the constitu-
tion that it can be declared void. In cases of doubt every possible
presumption not directly and clearly inconsistent with the language
and subject matter is to be made in favor of the statute.

3. ———— : PUBLIC ACQUIESCENCE. The act in question in this case has
been assumed to be valid by two decisions of the St. Louis court of
appeals, and by one decision of this court, and the act has been ac-
quiesced in for nearly five years by the people and all departments
of the government. *Held*, that these facts were sufficient to create
a reasonable doubt as to the correctness of the construction which
would hold it unconstitutional, and this doubt must be resolved in
favor of the act.

4. **St. Louis Criminal Court.** Section 18 of the act establishing the
criminal court of the city of St. Louis, (See R. S. 1879, p. 1509,) was
abrogated by sections 9 and 20 of the act of 1877 dividing the State
into judicial circuits.

*Prohibition.*

WRIT AWARDED.

Joseph R. Harris for relator.

John W. Dryden for respondent.

NORTON, J.—We are asked in this case to issue a writ
of prohibition forbidding the respondent, the judge of the
St. Louis criminal court from doing or permitting any act
to be done under an order made by said court on the 20th
day of February, 1882, directing a special venire return-
able on the 14th day of March, 1882, to issue to the sheriff
of the city of St. Louis, to summon 100 men from the
county outside the city of St. Louis, for the trial of the
cause of the State v. John D. Shea, upon an indictment
for murder alleged to have been committed in the city of

St. Louis, and pending in said court. We are also asked to forbid said judge from permitting any citizens of said county of St. Louis from being sworn as jurors in said cause.

It is contended on the part of respondent that the prayer of the petitioner should be denied, because said St. Louis criminal court by virtue of the 1st,

<div style="margin">1. COURTS: St. Louis county: constitutional law</div>

2nd, 3rd, 15th and 18th sections of the act establishing said court, passed on the 29th day of November, 1855, obtained the jurisdiction, which it is claimed said court is about to exercise, and that it has never been deprived of the jurisdiction thus conferred. On the other hand, while it is admitted by counsel for the State that the sections of the act creating the said criminal court did confer upon it the jurisdiction claimed, it is contended that such jurisdiction was taken away from said court by an act of the general assembly passed on the 28th of April, 1877, (Acts 1877, p. 207,) dividing the State into judicial circuits. That act declares that the "State is hereby divided into judicial circuits, each circuit to consist of the counties, and to be numbered as hereinafter set forth *

* Section 9. The Eighth judicial circuit shall consist of the city of St. Louis · * * Section 20. The Nineteenth judicial circuit shall consist of the counties of St. Louis, St. Charles, Lincoln and Warren." It is claimed by counsel for the State that sections 24 and 25, article 9, and section 24, article 6, of the constitution of 1875, conferred upon the general assembly the power to pass the above act. Counsel for respondent deny this, and argue with great earnestness and ability, that the said act of April 28th, 1877, in so far as it undertakes to place St. Louis county in the Nineteenth judicial circuit, and make the city of St. Louis the Eighth judicial circuit, is unconstitutional and void.

No question is ever presented to a court of last resort of a more delicate and important character than one which

2 CONSTITUTIONAL LAW: rules of construction. calls upon it to pass upon the constitutionality of an act of the legislature. In the solution of such a question when presented, resort should not be made to mere verbal criticisms, subtle distinctions, abstract reasoning or nice differences in the meaning of words : and in its consideration the maxim that " he who sticks to the letter " in the construction of a law, " sticks in the bark " is peculiarly applicable ; *qui haeret in litera, haeret in cortice.* " No rule is better settled than that acts of the legislature are presumed to be constitutional till the contrary plainly appears, and it is only when they manifestly infringe upon some provision of the constitution that they can be declared to be void for that reason. In cases of doubt every possible presumption not directly and clearly inconsistent with the language and subject matter is to be made in favor of the constitutionality of the act." *State v. Able,* 65 Mo. 362 ; *Stephens v. St. Louis Nat. B'k,* 43 Mo. 385 ; *State v. Cape Girardeau, etc., R. R. Co.,* 48 Mo. 468. These observations are made as indicating the proper rule for our guidance in solving the question presented.

In support of the position taken that the said act of April 28th, 1877, is void, it is argued that by virtue of section 24, article 9 of the constitution, the Eighth judicial circuit was made to consist of the county and city of St Louis, and that it was beyond the power of the legislature to change it, as was done by said act, inasmuch as under section 24, article 6 of the constitution, said Eighth circuit was excepted from the operation of the power therein conferred upon the legislature to divide the State into judicial circuits. Said section 24, article 9, which it is claimed irrevocably (except by constitutional amendment) fixed the county and city of St. Louis into one circuit, is as follows : " The county and city of St. Louis, as now existing, shall continue to constitute the Eighth judicial circuit, and the jurisdiction of all courts of record, except the county court, shall continue until otherwise provided by law."

It is argued that the words in said section " until otherwise provided by law," relate exclusively to the subject matter of the jurisdiction of all courts of record within the Eighth circuit as therein defined, except the county court, and not to the territorial jurisdiction of such courts, and that while the general assembly might change and alter the jurisdiction of such courts as to subject matter it could not change their jurisdiction territorially. It is contended that inasmuch as said section 24 consists of two clauses, the phrase " until otherwise provided by law," according to the grammatical construction of the sentence, applies only to the next preceding clause. In support of this view we have been cited to Broom's Legal Maxims, page 679, where it is said "that relative words must ordinarily be referred to the next antecedent when the intent upon the whole deed doth not appear to the contrary and when the matter itself doth not hinder it, the last antecedent being the last word which can be made an antecedent so as to have any meaning." The same writer says in the same connection: " But, although the above general proposition is true in strict grammatical construction, yet there are numerous examples in the best writers to show that the context may often require a deviation from this rule, and that the relative may be connected with nouns which go before the last antecedent and either take from it or give it some qualification."

If the grammatical construction of said section 24 is alone to be considered in construing it, and we are not to look at the circumstances which gave origin to the section, nor to the context, nor to the end to be accomplished by it, the interpretation contended for would be at least plausible, if not correct. When, however, these things are taken into account, we think the construction contended for by respondent cannot be maintained. Said section 24, establishing, as it does, a judicial circuit, and relating, as it does, to the continuation of the jurisdiction of all courts of record therein, except the county court, we would ex-

pect to find it in article 6 of the constitution, which is devoted to the "judicial department," but instead of finding it there we find it at the close of article 9, which treats of "counties, cities and towns," and preceded by four sections devoted exclusively to the county and city of St. Louis, which said sections fully provided for and authorized the adoption of a scheme and charter, which, if adopted, would bring about a new order of things in both city and county, disintegrate the county, separate the city from the county, making each independent of the other, one to exist as a city and the other as a county. The city was to be invested with all the property in its limits hitherto belonging to the county, and was to assume all the indebtedness of the county, collect the State revenue and perform all other functions in relation to the State as if it was a county. This new order of things would leave the city of St. Louis in the possession and with the ownership of the court house and jail, and necessitate on the part of St. Louis county the location of a county seat, and the erection of necessary buildings in which to hold its courts for the administration of civil and criminal law. The evident purpose of those sections was a complete divorcement of the city and county, and to make two separate and distinct parts of what had always before been one; one of these parts to be a county, the other a city, in many respects clothed with the attributes of a county, each independent of the other. It was known by the framers of the constitution that it would go into effect, if adopted, on the 30th day of November, 1875, and that the scheme and charter authorized by said sections could be adopted, as in fact they were adopted, and went into effect in October, 1876, before any legislature elected under said constitution could be convened. It was also known that if the scheme and charter should be adopted, the territory outside of the limits of the city of St. Louis, as enlarged, would at once become a county, and that the city of St. Louis would thereafter be no part of the county, but a city, at least in name, in

the State, independent of the county, and without being
in any county in the State, but still bearing the same rela-
tion to the State as a county, except it was to have no
county court. To meet this novel and anomalous state of
affairs, and to provide temporarily the means for the ad-
ministration of civil and criminal law in this dissevered
and disintegrated territory, in which, without some addi-
tional provision, neither civil nor criminal laws could have
been administered, said section 24 was incorporated, and
was evidently intended to apply to the condition of things
that would exist after the adoption of the scheme. That
such was the intention was evidenced by the fact that it
continued the jurisdiction of all courts of record, except
the county court, and it certainly was not intended to dis-
continue the jurisdiction of the county court in the city of
St. Louis except in the event of the adoption of the scheme
and charter. In view, therefore, of the necessity, which I
have attempted to show, gave origin to said section 24, and
the end sought to be accomplished by it; in view of the
fact that territorial divorcement and not alliance between
the city and county, was the chief object intended to be
accomplished by sections 20, 21, 22 and 23 of article 9, the
construction sought to be placed on said section 24, whereby
the city and county would be indissolubly bound together
territorially, except by constitutional amendment, in one
judicial circuit, we think is not justified, especially when
the construction contended for is mainly upheld by the in-
terposition of a comma after the word "circuit," thus
dividing a sentence containing two subjects into two clauses,
each clause embracing a subject, with a qualifying phrase
to the last clause.

If by looking at the whole instrument, especially to
those parts of it which gave rise to section 24, a different
intention clearly appears from that which a rigid adherence
to the grammatical construction of section 24 uncertainly
discloses, we are authorized to discard the latter and adopt
the former according to the rule heretofore adverted to as

laid down by Mr. Broom, and as stated in Potter's Dwarris
on Stat. and Con., p. 655, where he quotes from Mr. Story
the following, viz:   "That the first and fundamental rule
in relation to the interpretation of all instruments applies
to the constitution, that is, to construe them according to
the sense of the terms and the intention of the parties,"
and he adopts Blackstone's remark that the intention of a
law is to be gathered from the words, the context, the sub-
ject matter, the effects and consequences or the reason and
spirit of the law, and that words are generally to be under-
stood in their usual and most known signification, not so
much regarding the propriety of the grammar as their
popular and general use; that if words are dubious their
meaning may be established by the context, or by com-
paring them with other words and sentences in the same
instrument; that illustrations may be further derived from
the subject matter with reference to which the words are
used; that the effect and consequences of a particular con-
struction are to be examined, because if a literal meaning
would involve a manifest absurdity it ought not to be
adopted; and that the reason and spirit of the law, or the
causes which led to its enactment are often the best expo-
nents of the words.   When the words are plain and clear
and the sense distinct and perfect arising on them, there is
generally no necessity to have recourse to other means of
interpretation.   It is only when there is some ambiguity
or doubt arising from other sources that interpretation has
its proper office.   There may be obscurity as to the mean-
ing from the doubtful character of the words used, from
other clauses in the same instrument or from an incongruity
or repugnancy between the words and the apparent inten-
tion derived from the whole structure of the instrument or
its avowed object.   In such cases interpretation becomes
indispensable."

But casting out of sight all these things, and accept-
ing the view taken by respondent that the words " until
otherwise provided by law," occurring in said section 24,

"elate to the word "jurisdiction" as the last antecedent, the question then to be determined is, what was meant by that term? The argument made by respondent that it means jurisdiction as to subject matter only and not as to territory, we think is unsound, and the more reasonable meaning (if it is to be limited in its meaning at all) would be to say that it referred exclusively to territorial jurisdiction, for the reason that section 22, article 6, gave the general assembly full power over the jurisdiction of all circuit courts as to subject matter, except so far as defined by the constitution itself; and section 4 of the schedule gave it full power over criminal courts, not only as to their jurisdiction, but as to their existence. Said section 22 is as follows : " The circuit court shall have jurisdiction over all criminal cases not otherwise provided for by law, exclusive original jurisdiction in all civil cases not otherwise provided for, and such concurrent jurisdiction with and appellate jurisdiction from inferior tribunals and justices of the peace as is or may be provided by law." Said section 4 is as follows : "All criminal courts organized and existing under the laws of this State, and not specially provided for in this constitution, shall continue to exist until otherwise provided by law."

The general assembly having by these sections already been invested with the power to regulate the jurisdiction of these courts as to subject matter, no reason is perceived why it should again be invested by said section 24 with the same power which they already had by virtue of other sections ; and the clear inference deducible from this fact is, that when power was given to regulate the jurisdiction of the courts alluded to in section 24, the jurisdiction referred to related alone to their territorial jurisdiction. If the word was not used in this sense there was no need of its use at all. But aside from this, the section itself furnishes internal evidence of the correctness of this position. It provides for the continuance of the jurisdiction of all courts of record in the city and county of St. Louis, except the

jurisdiction of the county court. Now, it is manifest that it was not the purpose to discontinue the jurisdiction of the county court throughout the city and county of St. Louis, but only to discontinue it territorially; that is, over the city of St. Louis, and if jurisdiction is to be understood in that sense as applied to the county court, it must be understood in the same sense when applied to other courts referred to in the section, as it is not to be supposed that the framers of the constitution used the same word in the same clause in one sense when applied to one court and in a different sense when applied to other courts, there being nothing either on the face of the section or in the context indicating that such was their purpose.

The view we have taken of the subject is fully sustained by the case of the *State v. Brown*, 71 Mo. 454, where this court was called upon to pass upon the constitutionality of an act of the legislature growing out of the construction of section 5 of the schedule to the constitution. That section provides: "That all courts of common pleas existing and organized in cities and towns having a population exceeding 3,500 inhabitants, and such as by the law of their creation are presided over by a judge of a circuit court, shall continue to exist and exercise their present jurisdiction, until otherwise provided by law." The Moberly common pleas was such a court as was designated by the section, and the general assembly, on the 23rd day of April, 1877, passed an act adding another township of Randolph county to the territorial limit of said court. The point raised in the case was that said court had no jurisdiction over said township because the said act of the legislature was unconstitutional. In the disposition of the point it was said: "We are unable to appreciate the force of the objection, since the constitution seems to have left to the legislature the power to enlarge or diminish the jurisdiction of these courts or to abolish them entirely. In this case the jurisdiction was enlarged so as to extend to an adjoining township, and the power to make this exten-

sion seems to have been expressly confided to the legislature." The argument made, that a construction which limits the meaning of the word to territorial jurisdiction is too narrow, applies with equal force to the construction contended for by respondent in applying it alone to subject matter.

Another and broader view may be taken, which is that the word jurisdiction, when applied to a court, without any words being used restricting or qualifying its meaning, must be understood as applying to the jurisdiction of such court both territorially and as to subject matter.

Looking at the question then from any one of the stand-points we have taken, and we think it follows that the said act of 28th of April, 1877, whereby the county of St. Louis, a part of the territory of the Eighth judicial circuit, as established by the constitution, was detached from that circuit and attached to the Nineteenth judicial circuit, was a legitimate exercise of the legislative power conferred by said section 24, article 9 of the constitution ; and that the effect of the act was to withdraw the county of St. Louis from the jurisdiction of the St Louis criminal court, and limit its jurisdiction to the territory included in the city of St. Louis in like manner as the adoption of the scheme and charter withdrew the city of St. Louis from the jurisdiction of the county court of St. Louis county.

This very question was expressly decided by the St. Louis court of appeals in the case of *Ex parte Buckner*, 9

3. ——: public       Mo. App. 540, where it was held that "when
acquiescence.       St. Louis county was attached by the legislature to the Nineteenth judicial circuit, the St. Louis criminal court was divested of jurisdiction in that county, and the circuit court of that circuit and for said county acquired exclusive criminal jurisdiction therein unaffected by the act of 1855 creating the St. Louis criminal court, and depriving the St. Louis circuit court of original criminal jurisdiction therein." The doctrine announced in the

above case was re-affirmed by the St. Louis court of appeals in the case of the *State v. Kring*, (not yet reported,) where it said that " the jurisdiction of the St. Louis criminal court had been restricted to the city of St. Louis," and that " the territory outside the limits of the city of St. Louis had been withdrawn from the jurisdiction of the St. Louis criminal court," and what was said by that court upon this subject was expressly approved when said case came to this court. 74 Mo. 612. So it thus appears that the construction placed upon the constitutional provision in question, in the passage of said act of April 28th, 1877, by the first legislature elected and convened under it after its adoption, (which is entitled to some consideration, according to Mr. Sedgwick, page 552), has been approved and upheld by two decisions of the St. Louis court of appeals and one decision of this court, and that it has been acquiesced in for nearly five years by the people and all departments of the government. These are, at least, sufficient to create a reasonable doubt as to the correctness of the construction contended for by counsel for respondent, and this doubt, according to the authorities, must be resolved in favor of the constitutionality of the act. Sedg. on Stat. and Con., 552.

It is also argued that the exception contained in section 24, article 6, denied to the legislature the power to interfere territorially with the Eighth judicial circuit by diminishing it in taking therefrom St. Louis county. We think this is a misconception of the effect of the exception. The section is as follows : " The State, except as otherwise provided in this constitution, shall be divided into convenient circuits of contiguous counties in each of which circuits one circuit judge shall be elected; and such circuits may be changed, enlarged, diminished or abolished from time to time as public convenience may require, and whenever a circuit shall be abolished the office of judge of such circuit shall cease." The power conferred and duty enjoined on the legislature by this section was to divide the

State into judicial circuits to be composed of contiguous counties, and inasmuch as by section 24, article 9, which spoke with reference to a condition of things that would exist after the adoption of the scheme and charter, so much of the territory of the State as was embraced in the city and county of St. Louis had been constituted into a circuit composed not of contiguous counties, but of a city and county contiguous thereto, and inasmuch as said section had invested the general assembly with power to change it, such circuit was excepted from the operation of the power conferred by said section 24, article 6. Such exception could not and did not take away from the general assembly the power over the Eighth judicial circuit which section 24, article 9, invested it with.

It is urged as a reason against the construction we have given the said section 24, article 9, that it would authorize the legislature to enlarge, diminish, alter or abolish the said circuit. Grant that it would, why should it not be so? There is no peculiar sanctity or right attached to the Eighth judicial circuit, which should deny to the general assembly the same power over it which it confessedly has over every other circuit in the State created by the legislature. If safe to intrust the legislature with the power to alter, enlarge, diminish or abolish every other circuit in the State thus created, why is it unsafe to intrust it with the same power in reference to the Eighth judicial circuit, created by organic law, if the makers of such law saw fit to intrust it with the power. It is to be presumed, in either case, that the power would be wisely exercised, and with due regard to the public good.

It is also claimed that section 9 of the said act of 1877, which declares that the city of St. Louis shall constitute the Eighth judicial circuit, is void, because the legislature had no power to make any city a judicial circuit. We are unable to see the force of this position, since by said section 24, article 9, the city of St. Louis and the county of St. Louis were constituted into the Eighth judicial circuit,

and when the legislature diminished said circuit in pursuance of the power given them by the section creating it by detaching St. Louis county from it and attaching said county to the Nineteenth circuit, the city of St. Louis was left as the only territory composing said circuit, and by operation of said section 24, article 9, became the Eighth judicial circuit, and the legislature, in enacting said section 9 of the act of 1877, only affirmed what the constitution in said section 24 declared.

Our attention has been called to section 27, article 6 of the constitution, which declares that: "The circuit court of St. Louis county shall consist of five judges, and such additional number as the general assembly shall from time to time provide." It is insisted that as this section provides five judges for the circuit court of St. Louis county only, it, therefore, follows that the five judges, provided in the section, can only exercise jurisdiction in St. Louis county and not in the city unless it be held that the city and county of St. Louis still constitute the Eighth judicial circuit. The difficulty here suggested would exist, whether it be so held or not, because if the five judges are to follow the territory, St. Louis county was effectually cut off from the city of St. Louis when the scheme and charter went into operation in October, 1876, and lost its identity as a county with the city. But the difficulty, we think, is more apparent than real, and when the reason which existed and created the necessity for five circuit judges in St. Louis county and the sense in which the words "circuit court of St. Louis county" were evidently used are considered, the difficulty disappears. At the time said section 27 was inserted in the constitution St. Louis county was the Eighth judicial circuit, and the judges of said circuit were the judges of the circuit court of St. Louis county, and *vice versa.* The object of that section was to provide a sufficient number of judges to transact the legal business of said circuit composed of a county containing within its limits a city with a population, according to the census of

1870, of 310,864, about one-sixth the entire population of the State. It was the legal business which would necessarily originate in a city of such commercial importance that demanded the services of five circuit judges. It was not the legal business which would probably originate in St. Louis county (outside the limits of the city), with a population less than 40,000, according to said census, which created the necessity for that number of judges, for it would not afford sufficient civil and criminal business to employ the time of one judge, as evidenced by the fact that, in the judgment of the legislature, one circuit judge could not only transact all the civil and criminal business of St. Louis county (excluding the city of St. Louis), but that of three other counties besides, viz: Warren, Lincoln and St. Charles. The evident intention of the framers of the constitution was to provide the requisite number of judges for the Eighth judicial circuit—not for St. Louis county as simply representing a division of the State for county purposes, but for St. Louis county as representing the Eighth judicial circuit. When the reason which gave origin to the section, and the spirit which it breathes—for it is the spirit of a law which is the essence of it—are considered, we are constrained to say that the words " circuit court of St. Louis county," as they occur in that part of the section, are synonymous with the words " circuit court of the Eighth judicial circuit," and that when that circuit was limited to the city of St. Louis by the detachment of St. Louis county from it by the act of April 28th, 1877, that the five circuit judges belonged to the circuit and not to the county.

We are also of the opinion that by the said act of April 28th, 1877, the 18th section of the St. Louis criminal 4. ST. LOUIS CRIMI- court act, (R. S., p. 1509,) was made wholly NAL COURT. inapplicable to the new order of things brought about by said act, and in effect abrogated it. In the construction of section 24, article 9, we have not deemed it necessary to call to our aid section 25 of the same article

11- 75

which has been invoked as justifying our construction, notwithstanding the broad and sweeping character of the powers it confers upon the general assembly.

It follows from what has been said that respondent's demurrer to the petition must be overruled and the prayer of the petitioner granted, and it is, therefore, ordered that a writ of prohibition issue in accordance with said prayer. Judges SHERWOOD and RAY concur in this opinion; Judges HOUGH and HENRY dissent.

HENRY AND HOUGH, JJ., DISSENTING.—Prior to the passage of the act of 1877 there was no difficulty in determining, under the constitution of 1875, what was the jurisdiction of the courts in the city and county of St. Louis, either, as to the subject matter or territory over which it extended. Their existence, as organized before the adoption of that constitution, was recognized by it, and provision made for their continuance. Admitting, for the sake of the argument, that the qualification, or implied grant of power to the legislature contained in the words "until otherwise provided by law," found in section 24, article 9 of the constitution, applies both to the subject matter of the jurisdiction of those courts, and the territory over which it should extend, it by no means follows that any portion of the city or county of St. Louis could be placed in any other judicial circuit. Under this construction the legislature might have provided a criminal court for the county, with jurisdiction co-extensive with the county, and a term, or terms, of the circuit court for the county, with like territorial jurisdiction, and left the Eighth judicial circuit, as formed by the constitution, intact. But while the construction of section 24, article 9, which attaches the qualifying words, "until otherwise provided by law," to the first clause of the section, providing for the continuance of the city of St. Louis and the county of St. Louis as the Eighth judicial circuit, is violative of the fundamental rules of grammar, this might be allowable, if it

were not necessary, in order to sustain such a construction, to distort numerous other sections of the constitution.

Section 24, article 6, declares that " the State, except as otherwise provided in the constitution, shall be divided into convenient circuits of contiguous counties, in each of which circuits one circuit judge shall be elected; and such circuits may be changed, enlarged, diminished or abolished, from time to time, as public convenience may require ; and whenever a circuit shall be abolished the office of judge of such circuit shall cease." To what does the exception in this section relate? Palpably to the city and county of St. Louis. The constitution declares that those two portions of the territory of the State shall constitute the Eighth judicial circuit. The constitution established no other circuit, and the authority to form judicial circuits given to the general assembly applies only to the balance of the State. It is a virtual prohibition of the attachment of any portion of the city or county of St. Louis to any other judicial circuit. The authority is to form judicial circuits and to enlarge, diminish or abolish them; and, in the latter event, the office of the judge of the circuit ceased. If this power extended to the Eighth judicial circuit, then the legislature could abolish the circuit and the offices of the five judges of St. Louis county, notwithstanding section 27, article 6, provides that the circuit court of St. Louis county " shall consist of five judges."

Section 12 of article 6 declares that the jurisdiction of the court of appeals shall be co-extensive with the city of St. Louis, and the counties of St. Louis, St. Charles, Lincoln and Warren, with power to issue certain original remedial writs, and a superintending control over all inferior courts of record in said counties. By the following section it is provided that the court of appeals should consist of three judges, to be elected by the qualified voters of the city of St. Louis and the counties of St. Louis, St. Charles, Lincoln and Warren, and each of said counties is required to pay its proportional part of their salaries.

Section 14, article 6, makes these judges conservators of the peace throughout said counties. Section 27 of the same article provides that the court of appeals shall have exclusive jurisdiction of all appeals from and writs of error to the circuit courts of St. Charles, Lincoln and Warren counties, and the circuit court of St. Louis county in special term, and all courts having criminal jurisdiction in said counties. From these numerous sections it is obvious, we would say too clear for argument, if learned courts and distinguished lawyers had not held otherwise, that it was the intention of the constitutional convention that the city and county of St. Louis, however effectually divorced in other respects, should, so far as regards the administration of justice, continue to be one. Otherwise, how will one get an appeal to the court of appeals from either the city or county of St. Louis under the section just quoted? Appeals lie from the circuit court of St. Louis county, and writs of error are to issue to that court from the court of appeals, only on judgments rendered "in special term." Those words "special term" have no application to any other than the circuit court of St. Louis county, as that court was organized prior to the separation of the city from the county, and the employment of those words in the section furnishes an unanswerable argument in support of the position that the only court to which they could have any reference or application was to continue to be the circuit court of the county of St. Louis, including the city as a part of the county as one, so far as regards the administration of justice. And this view is distinctly intimated in the *State ex rel. Burden v. Walsh*, 69 Mo. 408, where it is said that the separation was to be complete, so far as the political status of the city and county respectively was concerned, but so far as the administration of justice was concerned the condition of things then existing was undisturbed. But if an appeal will lie from the county, rejecting those important words as surplusage, under what provision of the constitution conferring jurisdiction upon

the court of appeals can an appeal be taken to that court from the city of St. Louis ?   Where in the constitution is any warrant for a circuit court for the city of St. Louis apart from the county of St. Louis ?   It will not do to say that when those sections were passed upon, the members of the constitutional convention had not in contemplation the separation of the city of St. Louis from the county. Whenever, as in section 24, article 9, and section 12, article 6, the city and county of St. Louis are severally mentioned, it is evident that the proposed separation of the city and county was in the minds of the members of the convention.   Why say that the jurisdiction of the court of appeals should be co-extensive with the city of St. Louis and the county of St. Louis if no separation were in contemplation ?   The designation of the county was sufficient to embrace the city, for it was a part of the county, as much so as the city of St. Charles is a part of the county of St. Charles, or the City of Kansas of the county of Jackson.

Again, we would ask, under the construction placed upon the constitution by the majority of this court, by what authority, under the constitution, can the city of St. Louis be required to pay any portion of the salaries of the judges of the court of appeals ?   The counties of St. Louis, St. Charles, Lincoln and Warren are designated as the municipalities which are to pay those judges.   If the view taken by our associates be correct, no constitutional or statutory provision specifically naming the county of St. Louis embraces the city of St. Louis since the separation any more than it would embrace St. Joseph, Kansas City, or any other city or town in the State.

The trouble is not with the constitution, but with the law, in support of the constitutionality of which the constitution is to be distorted, entire phrases are to be eliminated, and others inserted in their stead, qualifying words are to be transposed and made to apply to subjects to which they had no relation as placed by the framers of the constitution.   The attempt is not to reconcile the act of

the general assembly with the constitution, but to reconcile the constitution with the act, and in doing so its symmetry and consistency are destroyed and chaos and confusion introduced. To support the construction contended for by relator, where the word "county" occurs in the sections bearing upon this subject, it is to be read "the city and county of St. Louis," and where the "city of St. Louis" is mentioned it is to be read "county of St. Louis," as the exigencies of this construction may require. So, in some places, one is to drop the word "county" and insert "Eighth judicial circuit," and when the Eighth judicial circuit is named, it is to be understood to mean the county of St. Louis or county and city of St. Louis, as may be necessary to sustain that construction.

The debates of the convention attending the adoption of section 25 of article 9, reserving legislative control over the city of St. Louis and county of St. Louis, make it so evident that this section was not intended to authorize the passage of such an act as that now under review that we deem it unnecessary to answer any argument based upon that section.

It is said that what is now decided by a majority of this court in this case was held in *State v. Kring*. No such question was presented by counsel in that case, either in their briefs or oral arguments. It was taken for granted that the act of 1877 was constitutional. The attention of no member of this court was directed to the question now under consideration, and it was wholly immaterial in the *Kring case* how it was decided. We will not speak of the consequences which may result from either construction. There are difficulties in the way of sustaining, as constitutional, the act of 1877, which are insurmountable. We have suggested a few of them, but a perusal of all the sections of the constitution bearing upon the subject will suggest many more, and also dangers likely to result from, and unanswerable arguments against, that construction.

If the construction placed by our brothers upon the

OCTOBER TERM, 1881. **167**

Lyı n v. The Chicago, Rock Island & Pacific Railroad Company.

several provisions of the constitution which we have been considering be the correct one, then it must be confessed that the constitution of 1875 is the most ambiguous, inconsistent and imperfect instrument that ever emanated from a deliberative body so distinguished as the one that framed it. That convention was the ablest body of men ever assembled in this State in a legislative capacity, and we are of the opinion that the fault does not lie in their work, but in the interpretation placed upon it.

Entertaining these views, we feel constrained to enter our dissent from the opinion filed herein by a majority of this court.