## THE STATE v. KRING, *Appellant*.

1.  **St. Louis Criminal Court**: UNCONSTITUTIONALITY OF SPECIAL LAW RELATING TO PRACTICE THEREIN. Section 1 of the act entitled "An act in relation to criminal procedure in the city of St. Louis, and to repeal sections 18 and 19 of chapter 2 of the appendix of the Revised Statutes of 1879, concerning the criminal court," approved March 26th, 1881, substituting a different mode of procedure on application for change of venue from that provided in said sections 18 and 19, is a special law applicable to the St. Louis criminal court only, and is in conflict with section 53 of article 4 of the constitution of 1875, prohibiting the general assembly from passing any local or special law "regulating the practice or jurisdiction  *  * in any judicial proceeding  *  *." It seems, also, that section 2 of such act, enacted only to give effect to section 1, by repealing said sections 18 and 19 did not effectuate their repeal.

2.  ———: CHANGE OF VENUE. Section 16 of the act establishing the St. Louis criminal court, (2 R. S. 1879, p. 1507,) and so much of section 19 of said act as required applications for changes of venue from that court on the ground of the incompetency of the judge thereof, to be made to the circuit court of St. Louis, are repealed by sections 1877 to 1881, inclusive, and section 1999, (1 R. S. 1879, pp.

314, 315, 332,) because totally repugnant thereto; but so much of said section 19 as required applications for changes of venue from that court on account of the prejudice of the inhabitants of the city of St. Louis, to be made to the judge of the St. Louis circuit court, is not repealed thereby.

3. **St. Louis, Separation of City and County**: INDICTMENTS, PLACE OF TRIAL. An indictment found by a grand jury of the county of St. Louis before the separation of the city from the county by the scheme and charter for an offense committed in the city, remained in force after the separation took place and was triable in the criminal court of the city

4. **Continuances.** The granting of continuances is somewhat in the discretion of the trial court, and the appellate court will not interfere unless that discretion has been manifestly abused. Affidavits for continuance, because of the absence of material witnesses, must state the facts which show diligence in endeavoring to procure their testimony, and not merely that diligence was used. Instances of insufficient affidavits.

5. **Conditional Plea of Guilty, Equivalent to Standing Mute.** Upon an indictment for murder in the first degree, defendant pleaded guilty to murder in the second degree, upon an agreement with the circuit attorney that he should be sentenced to imprisonment in the penitentiary for a term not exceeding ten years. The court, however, gave him twenty-five years. He then asked leave to withdraw his plea of guilty and enter a plea of not guilty, which was refused. He appealed and obtained a reversal of the judgment upon the ground of that refusal, alone. Upon the subsequent trial he refused to withdraw his plea of guilty, and also refused to stand upon it unconditionally, insisting upon his agreement with the circuit attorney. The trial court then set aside his plea of guilty, and ordered the clerk to enter for him a plea of not guilty. *Held*, that such action was proper, as the defendant by his conduct virtually stood mute, and that defendant was properly put upon trial for murder in the first degree.

6. **Evidence of Another Offense.** Where defendant, upon the cross-examination of a witness for the State, by direct questions first discloses his commission of another crime than that for which he is on trial, it is no ground for reversal that the State is afterward permitted to prove by another witness the same facts in relation to the crime as had already been brought out by such cross-examination.

7. **Evidence.** Defendant's declarations made after the commission of a homicide that he was sane when he committed it, are admissible against him for what they are worth.

8. ———. When evidence relates only to a fact the existence of which

is really conceded, its admission, even if erroneous, cannot be a ground of reversal.

9. ———: DEPOSITION: PRACTICE. When a deposition has been read by agreement as the testimony of an absent witness, the witness cannot afterward be examined orally at the same trial.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*L. D. Seward* and *P. N. Jones* for appellant.

Crimes are local, and must be prosecuted in the county where they are committed; only in such county can a grand jury inquire of them. 4 Black. Com., 303; Bish. Crim. Prac., § 49; *Hughes v. State*, 35 Ala. 357. When a county is divided, a criminal action, before the division, can be prosecuted only in the particular new county where is the place of the offense. *State v. Jones*, 3 Halst. 307; *State v. Jackson*, 39 Me. 291; *Hall v. State*, 51 Ala. 9; *State v. Donaldson*, 3 Heisk. 48; *State v. Jones*, 4 Halst. 357; Bish. Crim. Prac., § 49; *McElroy v. State*, 13 Ark. 708. The first step in a prosecution in such new county is an indictment by a grand jury of such county. §§ 12 to 22, art. 2, Const. 1875. A statute providing that a person may be indicted by a grand jury of another county than the one where the offense was committed, has been held to be unconstitutional and the indictment invalid. *Ex parte Slater*, 72 Mo. 102. A new indictment should have been found in the present case. *State v. Lewis*, 69 Mo. 92.

Setting aside the plea of guilty when defendant refused in open court to withdraw it, was error. A defendant may, if he chooses, plead guilty, and no one but himself can withdraw such plea. Bishop Crim. Prac., 268; *Younger v. State*, 2 W. Va. 579. He may, by leave, withdraw his plea at any time before judgment. *State v. Cotton*, 4 Fost. (N. H.) 143; *Reg. v. Sell*, 9 Carr. & Payne 346. And also after judgment, when there has been a reversal. *Comm. v. Ervine*, 8 Dana (Ky.) 30. The court cannot re-

quire .or compel one who has, by consent of the circuit attorney and by leave of the court, pleaded guilty, to withdraw his plea; neither can the court set aside his plea of guilty, and enter a plea of not guilty of a higher degree, of its own motion. When, after the reversal, the defendant was brought into court and asked if he desired to withdraw his plea, and he stated that he did not desire to do so, and his counsel moved the court to sentence him, the court should have done so, and the fact that he asked to be sentenced in accordance with an understanding between him and the circuit attorney, cut no figure. It was known to him, or if not, should have been made known to him, that the court would not be bound by the understanding or agreement, and then if he did not choose to withdraw his plea, the court should have sentenced him on his plea of guilty.

The court had no power to .put defendant on trial again for murder in the first degree. A plea of guilty, regularly entered and regularly received, is equivalent to a conviction. *State v. Goldstein*, 32 Cal. 432; *Shepherd v. People*, 25 N. Y. 419. One convicted of murder in the second degree cannot be afterward tried for murder in the first degree. *State v. Ross*, 29 Mo. 38; *State v. Smith*, 53 Mo. 139. It cannot be claimed that the rule in the case of *State v. Ross*, and the law of the land, was abrogated by the constitution of 1875, as the offense was committed and the indictment was presented prior to the constitution of 1875, because it would be an *ex post facto* law prohibited by the Constitution of the United States. § 10, art. 1, Const. of the U. S.

The order appointing Judge Burckhartt was invalid, because the law of 1881 is unconstitutional, and by its terms does not purport to repeal section 16 of the act establishing the court. It is unconstitutional because it is a special law, regulating the practice in a judicial proceeding. Art. 4, § 53, Const. 1875; *Ex parte Allen*, 67 Mo. 534; *State v. Daniels*, 66 Mo. 192. It cannot be contended

that the law of 1881 is unconstitutional only in part, and that the repealing clause may be valid, and that the general law would then apply, because when a law is passed in the place of, or as a substitute for, another, the repealing clause falls with it, if it is unconstitutional. *State v. The Judge,* 11 Wis. 50; *Shepherdson v. Railroad Co.,* 6 Wis. 605; *Tims v. State,* 26 Ala. 165; *Sullivan v. Adams,* 3 Gray 476; *Devoy v. The Mayor,* 35 Barb. 264; *Campan v. Detroit,* 14 Mich. 276; *Childs v. Shower,* 18 Iowa 261; *Harbeck v. N. Y.,* 10 Bosw. 366. Sections 1878, 1881, 1999, Revised Statutes 1879, do not repeal section 16 by implication, as the repeal of special laws by general laws is not favored. *State v. McDonald,* 38 Mo. 529; *State v. Fiala,* 47 Mo. 310; Cooley's Const. Lim., § 186; *State v. Pearcy,* 44 Mo. 159; *State v. Daniels,* 66 Mo. 192.

The case should have been sent to the St. Louis circuit court on defendant's motion. *State v. Houser,* 28 Mo. 233. The testimony of the witnesses, as appears from the affidavit, was important and necessary for the defense, and due diligence was shown, and the affidavit complied substantially with the statute, and a postponement or continuance should have been granted. *State v. Klinger,* 43 Mo. 127; *State v. Lange,* 59 Mo. 418; *State v. Hollenscheit,* 61 Mo. 302; *State v. Lewis,* ante, 222.

Error was committed in admitting testimony to prove the commission of other crimes. *State v. Greenwade,* 72 Mo. 298; *State v. Reavis,* 71 Mo. 420; *State v. Nugent,* 71 Mo. 136; *People v. Fair,* 43 Cal. 137.

Defendant's confessions that he was sane when the homicide was committed, were incompetent. *People v. Pomeroy,* 117 Mass. 143. In excluding the testimony of Dr. Schlernitzhaur, the court, after stating that the witness might be introduced out of time, erred in refusing to permit him to testify. 1 Grah. & Wat. New Trials, 260; 7 ъ. Lm. 306; 7 Greenl. 181.

*Joseph R. Harris*, Prosecuting Attorney of the city of St. Louis.

Section 23, article 2, constitution 1875, abrogates the rule laid down in *State v. Ross*, 29 Mo. 32, and *State v. Smith*, 53 Mo. 139. The rule now is that where a conviction for murder in the second degree on an indictment charging murder in the first degree has been set aside, the defendant is again triable for murder in the first degree —the previous proceedings being equivalent to a mistrial. *State v. Sims*, 71 Mo. 538. Neither a conviction nor a plea, under such circumstances as are detailed in this connection, would amount to an acquittal of the higher offense. All the proceedings relative to the plea of guilty of murder in the second degree, and the action of the court thereon, are subsequent to the adoption of the constitution of 1875. And the constitutional change is not a change in crimes, but in criminal procedure, and is not *ex post facto*. *Gut v. State*, 9 Wall. 35; *Cummings v. Missouri*, 4 Wall. 326. The defendant stood not upon the plea of guilty of murder in the second degree *per se*, but upon that plea accompanied with certain conditions as to punishment, which alleged agreement the court refused to entertain. The court had a perfect right to disregard any alleged agreement between defendant and the circuit attorney. To hold otherwise would be to place the sentencing of criminals in the hands of the prosecuting officer, and deprive the court of its most important function. The spirit of our laws places with the jury, under the supervision of the judge, the final execution of the law. Under the constitution of this State it cannot be elsewhere.

Sections 1878 to 1881 had no application to the criminal court of St. Louis city. Such of these last-mentioned sections as were in force when the St. Louis criminal court was organized were rendered inoperative in the jurisdiction of that court by virtue of sections 18 and 19 of the

act creating that court, and such of them as have been passed since did not operate to repeal the provisions of this law, made especially applicable to that court and its jurisdiction.   R. S., § 3158; *Mauro v. Buffington*, 26 Mo. 184; *State v. McDonald*, 38 Mo. 529.

The record discloses no application made under sections eighteen and nineteen of the criminal court act, for a change of venue.   The criminal court had no jurisdiction to order a change of venue or entertain a petition for that purpose.   The circuit court alone had jurisdiction, and the application of November, 1880, was therefore properly denied.   It is also immaterial whether section 1878, Revised Statutes, repealed sections 16, 17 and 19 of the act establishing the criminal court, for the act of March, 1881, made full provision for the proceedings that were had.   This act is constitutional.   *State v. Brown*, 71 Mo. 454; *State v. Laughlin*, 73 Mo. 443.

The motion to send the cause to the circuit court of St. Louis county on the ground that the indictment was found in that county at a time when St. Louis city was a part of St. Louis county, and the motion to quash the indictment, were both properly overruled.   The grand jury which returned the indictment was summoned from the body of the county, or political subdivision of the State in which the offense was committed.   The indictment was returned to the St. Louis criminal court—the court in which the defendant was tried.   It was not pretended that at the time of the finding the indictment, or at the time of the trial, the criminal court had not jurisdiction over offenses committed within the city.   By what rule of law can it be said that a crime, committed within a territory which from the creation of the court has always been within its jurisdiction, cannot be tried by that court because a portion of its territory—not being that in which the crime was committed—has been taken away?   No change was ever made as to the court in which this indictment should be tried, the only change being to effect the

territorial limits over which the court might exercise juris-
diction. That there may be this partial abolition of juris-
diction is unquestionably settled. *State v. Brown*, 71 Mo.
454; *State v. Laughlin*, 73 Mo. 443.

*D. H. McIntyre*, Attorney General, also for the State.

Simply reversing and remanding a cause has been ex-
pressly held by this court to mean that a new trial shall be
had. *State v. Stephens*, 71 Mo. 535; *State v. Newkirk*, 49
Mo. 472. The case, then, being remanded for a new trial,
the defendant should have been, and was properly tried for
murder in the first degree, as charged in the indictment.
*State v. Sims*, 71 Mo. 538.

The offense is charged to have been committed in the
city of St. Louis, in the county of St. Louis, and at the
time of its commission, and when the indictment was
found, the territorial jurisdiction of the criminal court
was co-extensive with the limits of the county of St.
Louis, which then included the city. It will not be denied
that the criminal court had jurisdiction of the offense
when it was committed, and also when the indictment was
found. Before the last trial the government of the city of
St. Louis and St. Louis county was separated, and the
jurisdiction of the criminal court restricted to the city.
This jurisdiction still embraced the territory where the
crime was committed, and to have tried defendant before
any other tribunal, except at his request, would have been
in violation of the common law, and the constitutional
provision, for "a speedy, public trial by an impartial jury
of the county." Jurisdiction depends upon the state of
things at the time the action is brought, and if the circum-
stances are then such as to vest jurisdiction, it cannot be
ousted by any subsequent event. The erection of a new
county creates, in this respect, no new relation. The
offense is against the State, not against the county. The
grand jury was of the body of the county within which.

the crime occurred, the petit jury of the neighborhood, thus fulfilling every requirement of the common law and the constitution. *State v. Jones*, 4 Halst. (N. J.) 373. Cutting off territory within the jurisdiction of the criminal court when the offense was committed, but still leaving the place of the crime within its jurisdiction, could not certainly have operated to the injury of defendant, nor could the changing of the county line. *Jordan v. State*, 22 Ga. 555, 556; *Nelson v. State*, 1 Texas App. 41; 1 Whar. Am. Cr. Law, (5 Ed.) § 277, p. 134.

HENRY, J.—The defendant was indicted in the criminal court of St. Louis county, at the March term, 1875, for the murder of Dora Broemser. He was tried and convicted at the November term of said court, 1875, but that judgment was reversed by this court, and the case is reported in 64 Mo. 591. Subsequently there were two mistrials, and the cause was continued from time to time until November 12, 1879, when, by consent of the circuit attorney and with leave of the court, he withdrew his plea of not guilty and entered a plea of guilty of murder of the second degree, and was sentenced to imprisonment in the penitentiary for a term of twenty-five years. He thereupon asked leave of the court to withdraw his plea, and to enter a plea of not guilty, alleging as a ground for that motion, an agreement with the circuit attorney that if the plea of guilty of murder in the second degree was entered, the punishment should be fixed at ten years' imprisonment in the penitentiary. The court overruled the motion. From the judgment he appealed to the court of appeals, by which it was affirmed, and, on appeal from that court to this, the judgment of the court of appeals was reversed and the cause remanded to the criminal court. The ground on which this court reversed the judgment was that defendant's plea of guilty was under "an agreement with the circuit attorney, apparently sanctioned by the judge of the criminal court, that the sentence should not

exceed ten years' imprisonment in the penitentiary." *State v. Kring*, 71 Mo. 551. When the mandate of this court was filed in the criminal court, defendant was asked by the court if he desired to withdraw his plea and plead not guilty, and answered that he did not, and his counsel moved the court to sentence him on that plea, which the court refused, and in conformity with the decision of this court, sustained the motion previously made for leave to withdraw his plea of "guilty" and enter a plea of "not guilty." Subsequently defendant was brought into court and asked by the court if he desired to withdraw his plea, and his answer was, "I have nothing further to say." The court then made an order setting aside the plea, and defendant was arraigned and asked if guilty, or not guilty, and replied: "I have no answer to make; I stand by the plea and the agreement." Whereupon the court ordered the clerk to enter for him a plea of "not guilty of murder of the first degree."

On the 26th of November, 1880, the defendant made an application to the criminal court for a change of venue on account of the prejudice of the inhabitants of the city of St. Louis, on which the court heard evidence and refused the application. On the 15th of December, 1880, the defendant filed an application for a change of venue on account of the prejudice of the judge of the criminal court. The cause was continued from time to time, until April 27, 1881, when the judge of the criminal court, on the application for a change of venue filed on the 15th of December, 1880, by order of court, appointed Hon. George H. Burckhartt, judge of the second judicial circuit, to try the cause, and set the trial for the 10th of May, 1881. The cause was then called for trial, and defendant's attorneys filed successively the following motions, which were all overruled: First, to set aside the order made by Judge Laughlin, refusing defendant's application for a change of venue; second, a new motion for a change of venue; third, to set aside the order appointing Judge Burckhartt to try

the cause; fourth, a motion to send the cause to the circuit court of St. Louis county; fifth, a motion to quash the indictment; sixth, a motion to transfer the cause to the circuit court of the city of St. Louis; and seventh, for a continuance of the cause. A jury was then empaneled to try the cause, and a trial was had, which resulted in the conviction of defendant of murder in the first degree, which judgment was, on appeal to the St. Louis court of appeals affirmed, and defendant has appealed to this court.

There is no question, indeed it is not denied, that defendant shot and killed Mrs. Broemser, under circumstances which constituted the homicide a murder of the first degree, unless defendant was insane to a degree which rendered him irresponsible for the act, when committed. That was the only defense relied upon, and two juries, under instructions on the subject of insanity which have been repeatedly sanctioned by this court, have found against him on that issue, and we are relieved of the necessity of considering that question, in any of its aspects; since there was abundant evidence to warrant the finding of the jury.

The most difficult question in the case, and one which 1. ST. LOUIS CRIMINAL COURT: unconstitutionality of special law relating to practice therein. has been most carefully considered, is that which arises on the order appointing Judge Burckhartt to preside on the trial of the cause.

By the act establishing the St. Louis criminal court, found in the appendix to volume 2 of the Revised Statutes of 1879, on an application for a change of venue from that court, on account of any legal objection to the judge of that court, it was provided by section 16 that the cause should not be sent to a different county for trial, but should be transferred to the circuit court. By section 19, applications for change of venue from the St. Louis criminal court for any of the causes provided by law, were required to be made to a judge of the St. Louis circuit court, who should hear evidence and determine the existence or non-existence

of the fact stated in the petition, and, if found true, state the same in writing, and issue his warrant to the judge and clerk of the criminal court, commanding them to transfer the cause to the St. Louis circuit court; and, by section 16, upon transcript of the record of such cause being filed in the office of the clerk of the court to which the same shall have been transferred, such court shall be possessed of full jurisdiction of the cause, and shall proceed to hear and determine the same. By an act of the general assembly approved March 26th, 1881, entitled "An act in relation to criminal procedure in the city of St. Louis, and to repeal sections 18 and 19 of chapter 2 of the appendix of the Revised Statutes of Missouri concerning the criminal court," it was provided, in section 1, that changes of venue should be allowed from that court for any cause for which a change of venue may be allowed from other courts in this State exercising criminal jurisdiction, but no special judge should be elected or selected from the members of the bar to sit on the trial of the cause on account of the incompetency of the judge of said court; but that in such case the judge might, by order of court, set the cause down for trial, and notify and request any judge of any circuit or criminal court in this State to try it. By section 2, the 18th and 19th sections of the act establishing the St. Louis criminal court were repealed. The 3rd and last section provides when the act shall take effect. By the 53rd section of article 4, of the constitution of 1875, the general assembly is prohibited from passing any local or special law—" regulating the practice or jurisdiction or changing the rules of evidence in any judicial proceeding."

In *Ex parte Allen*, 67 Mo. 534, it was held that "an act making provision for supplying the place of criminal judge, in the event of his sickness, absence or inability to hold court," was one "regulating the criminal practice and procedure in courts of record." The act of 1881 is a special law, applicable to the St. Louis criminal court only, and, therefore, in conflict with the constitution; section 54 of

the 4th article of the constitution, providing in what manner local legislation may be obtained, has no application, because section 53 is an absolute prohibition of local or special legislation on the subject therein specified.

But it may be contended that although the 1st section is unconstitutional, the repealing section may stand, because the constitution authorizes the general assembly to pass laws repealing special or local acts. There are but three sections to the act in question, the 1st providing for what cause, and in what manner, changes of venue may be granted; the 2nd repealing sections 18 and 19 of the act establishing the criminal court; and the 3rd providing when the act should take effect. The 1st section substitutes a different mode of procedure, on application for change of venue, from that provided in the sections of the criminal court act repealed, and the other sections have no other purpose but to give effect and operation to that section. As a general proposition it may be conceded that, although one or more provisions of an act of the legislature be in conflict with the constitution, it does not necessarily follow that other provisions of the same act are also unconstitutional. Cooley's Const. Lim., 177, 178. " If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other. But if it purports to accomplish a single object only, and some of its provisions are void, the whole must fall, unless sufficient remains to effect the object without the aid of the invalid portion." Ib.

But we shall not prolong the discussion on that subject, inasmuch as we hold that the appointment of Judge Burckhartt was proper without regard to the act of 1881. Sections 1877 to 1881, inclusive, of the Revised Statutes of 1879, and section 1999 settle the question. By the first of said sections it is provided that when any indictment or criminal prosecution shall be pending in any circuit or criminal court, the judge shall be

2. ——: change of venue.

deemed incompetent to hear and try said cause in either
of the following cases: It proceeds to enumerate these
cases, and they include that of the prejudice of the judge.
Section 1878 provides for the election of a special judge,
on an application for a change of venue on the ground that
the judge is incompetent, for any cause specified in the
preceding section. Section 1880 provides that the judge
may order an election of a special judge without an appli-
cation for a change of venue, when it shall be within his
knowledge that any of the enumerated causes exist, which
disqualify him to sit in the case. Section 1881 provides
that if the case in which the judge is incompetent to sit
for any of the causes named in section 1877, be a felony,
and no suitable person to try the case will serve when
elected, or if, in the opinion of the judge, no competent or
suitable person can or will be elected as such special judge,
he need not order an election, but may request the judge
of some other circuit to try the cause. By section 1999
the provisions of the criminal code applicable to the cir-
cuit court and the judges thereof shall also be applicable
to any other court of record exercising criminal jurisdic-
tion and the judges thereof, in all cases where no other or
different provision is made by law for the government and
control of such court. Sections 1877, 1878 were substan-
tially embodied in the act approved May 19th, 1877, (Sess.
Acts 1877, p. 357,) and the first clause of section 1880 is
the same as section 3 of the act of 1877, and by section 4
of that act all acts and parts of acts inconsistent with its
provisions were repealed.

It follows that so much of section 19 of the act estab-
lishing the criminal court of St. Louis as required applica-
tions for changes of venue from that court, on the ground
of the incompetency of the judge of that court, to be
made to the circuit court of St. Louis, and section 16 of
said act, are repealed, because totally repugnant to the sec-
tions of the criminal code above recited. To give those
sections full force in their application to all courts having

40—74

criminal jurisdiction, would be impossible, if the application for a change of venue on the ground of incompetency of the judge had to be made to the judge of the circuit court. The jurisdiction of the St. Louis circuit court, under said section 19, *supra*, is limited and special. It is to hear the application, and, if the facts are found as alleged, to issue his warrant to the clerk and judge of the criminal court, commanding them to transfer said cause to the St. Louis circuit court, and, when such transfer is made, gives the circuit court full jurisdiction of the cause, to hear and determine it. The judge of the circuit court of St. Louis is not authorized, by any act, to order an election, or appoint a judge, on such application. He can only refuse the application or order the cause transferred and try it. We also think that by the phraseology of section 1878, the application is to be made to the judge of the court in which the cause is pending. Whenever the application is made for a change of venue for any cause enumerated in section 1877, " it shall be lawful for the judge to hear such application." What judge? Evidently the judge of the court in which it is pending. This is so of all applications for changes of venue from the circuit courts of the State, and from all courts where there is not a special provision to the contrary.

Section 1999 continues the jurisdiction of the circuit court on applications for change of venue made on account of the prejudice of the inhabitants, because, while it provides that the provisions of the criminal code, applicable to the circuit court, etc., shall be applicable to any other courts of. record, exercising criminal jurisdiction, it excepts those cases in which other or different provision is made by law for the government and control of such courts or judges. No such exception occurs in the other sections of the General Statutes, prescribing the manner of obtaining a change of venue, on the ground of the incapacity of the judge. And it strengthens the view here taken that sections 1856, 1857, 1858, 1859 of the general

law, providing for changes of venue in criminal causes on the ground of prejudice of the inhabitants, by their terms are applicable only to the circuit courts. They do not, therefore, apply to the criminal court of St. Louis, but leave the law in relation to changes of venue from that court on the ground of the prejudice of the inhabitants, as found in section 19 of the act establishing the criminal court. We, therefore, conclude that the appointment of Judge Burckhartt was made in strict conformity with law, and that defendant's applications for a change of venue, on the ground of the prejudice of the inhabitants of St. Louis, were properly refused because made to the judge of the criminal court, and not to the judge of the circuit court of the city of St. Louis.

It is contended by appellant's counsel that the indictment should have been quashed, because found by a grand S. ST. LOUIS, SEPA- jury for the body of the county of St. Louis, RATION OF CITY AND COUNTY: in- prior to the separation of the county and dictments, place of trial. city by the scheme and charter. The homicide was committed in the city, and the point they make is, that one cannot be tried on an indictment not found by a grand jury of the jurisdiction in which the offense was committed. In other words, that the separation by the scheme and charter virtually quashed the indictment found before the separation and made it necessary that the defendant be re-indicted by a grand jury of the city of St. Louis. If the offense had been committed within what are now the limits of the county of St. Louis, it would probably have been defendant's right to be tried in the county; but we are not prepared to assent to this proposition of his counsel. If it be correct, then all persons indicted for crimes, to the prosecution of which there is, by law, a limitation as to time, would have been entitled to their discharge, if the time had elapsed when the separation occurred. They could not be tried on the old indictment because not found by a grand jury of the proper jurisdiction, and to a new indictment they could have

pleaded the statute of limitation. However, this question was, by the court of appeals, satisfactorily disposed of in its opinion delivered herein.

The refusal of defendant's application for a continuance, made to Judge Burckhartt, is next to be considered. 4. CONTINUANCES. It was based upon the absence of three witnesses, William Goebel, J. K. Knowles and A. Soehngen, and the affidavit, after stating what they would respectively testify to, which, it may be conceded, was material evidence, alleges, in relation to Goebel, that he was in attendance upon the court at the December term, 1880; that he then resided on Third, between Elm and Spruce streets, in St. Louis; that on the 6th day of May, 1881, defendant's attorneys had a subpœna issued for him and placed in the hands of the sheriff of said city, with witness' address upon the back of said subpœna, and that they also gave the sheriff directions as to where they believed he then resided, and where he had been seen a few days before; that the subpœna was returned " not found;" that, although efforts had been made, within two days before the filing of said affidavit, to find him, the attorneys had failed. They are informed and now believe, that he has lately removed to the southern portion of the city, and since the call of the case, on May 10, 1881, they have been unable to ascertain his location. This affidavit was filed May 11, 1881. When the subpœna was returned does not appear. If on the 6th of May, as we infer, because the affidavit must be taken most strongly against him, then no effort was made until the 9th of May, although the case was set for trial on the 10th, to learn where the witness resided. It is nowhere stated what efforts were made to ascertain where he was. It does not appear that they made inquiry where he formerly resided, and not an act of diligence is disclosed except the procuring of a subpœna and placing it in the hands of the officer, and this not until the 6th of May, the case being set for trial on the 10th. This cause had been pending for nearly seven years, and during all that time

the accused had counsel who, in other respects, have exhibited commendable zeal in his behalf, and it is singular that with respect to a witness as important as they deemed Goebel, no greater diligence to procure his testimony was used.

With respect to Knowles the affidavit alleges that before the first trial of this cause he left the United States and went to England, where he remained until the fall of 1880, when he returned to the State of Illinois, locating near Alton; that he was in attendance at the December term, 1880, when the cause was continued; that as soon as defendant was informed that the act of 1881 had been passed—and this act was approved March 26, 1881—he began his efforts to procure the attendance of said Knowles, and then learned for the first time that he had removed from Illinois, and within the last few days first learned that his present residence is in Elkhorn, Indiana. The affidavit nowhere shows that any effort whatever was made to ascertain his whereabouts, after the defendant learned that he had left Alton. No inquiries at Alton, by correspondence or otherwise, to ascertain where he had gone. An affidavit for a continuance must state the facts which show diligence; not merely that diligence was used.

With respect to Soehngen, the affidavit alleges that he resides at No. 1911 Lynn street, St. Louis; and that a subpœna was issued for him and placed in the hands of the sheriff on the 6th day of May, 1881, with his address indorsed on the back of the subpœna, and that the sheriff's return was that he was not found; that defendant is informed that he is temporarily absent from St. Louis. When this information was received, whether before or after the subpœna was issued, does not appear. How long that absence would continue is not stated. From the evidence in the record it appears that this witness spent his time between Chicago and St. Louis; that he was frequently absent from St. Louis, and yet no effort was made to serve him with a subpœna until the 6th of May, four

days before that on which the case was set for trial, and none whatever to take his deposition.

It also appears from this record that William Goebel, one of the three persons on account of whose absence the continuance was asked, was actually present and testified in the cause. We are satisfied from all the foregoing facts that the application for a continuance was made for delay merely, and as the record discloses the fact that the affidavit, in many of its material allegations, is absolutely false, as appears here from the testimony of Goebel, compared with that which the affidavit stated he would testify to, we are inclined to sustain the trial court in its refusal to grant the continuance. The granting of continuances is somewhat in the discretion of that court, and we will not interfere, unless that discretion has been manifestly abused.

Nor did the court err in the matter of defendant's pleas. He had asked leave of the court to withdraw his

5. CONDITIONAL PLEA OF GUILTY, EQUIVALENT TO STANDING MUTE. plea of guilty and enter a plea of not guilty, which was refused, and thereupon he appealed and obtained a reversal of judgment on that ground alone. When the cause was again called he insisted upon the agreement made with the circuit attorney that on that plea he should be sentenced to ten years' imprisonment in the penitentiary, and for no longer term. It was an attempt to force the court to permit the accused to dictate the punishment he should receive. If the court should sentence him for ten years, he would let his plea stand; if for a longer period, he would again appeal and have the judgment reversed on the same ground as before. He would not stand absolutely by his plea, but only conditionally. It was trifling with the court. He was repeatedly asked whether he would withdraw that plea, or stand upon it, and as often refused to withdraw it, and insisted upon his agreement with the circuit attorney. The court had sustained his motion for leave to withdraw that plea, and enter one of not guilty, and therein obeyed

the mandate of this court, and the defendant's duty was either to withdraw the plea, and plead not guilty, or stand unconditionally upon his plea of guilty. In refusing to do either, he virtually stood mute, and the action of the court in setting aside the plea of guilty, and ordering the clerk to enter a plea of not guilty for him was proper. There is nothing in the point, that after an accepted plea of guilty of murder of the second degree, the defendant could not be put upon trial for murder of the first degree. We shall, on that proposition, accept what was said by the court of appeals in its opinion delivered in this cause. Nor do we perceive any error in the selection of the jury. The defendant's counsel were permitted to examine them as to the very matters which they allege the court refused their permission to inquire into.

It is assigned as error that on the trial of the cause the State was permitted to prove that defendant had, prior 6. EVIDENCE OF AN- to the homicide in question, committed the OTHER OFFENSE. crime of forgery in the state of Illinois. The State introduced one Webber as a witness, and on his cross-examination by defendant's counsel this fact was first disclosed in answer to direct questions propounded to him, and they cannot complain that the State was afterward permitted to examine a witness in relation to what was so testified to by Webber on cross-examination. No other facts, in relation to that crime, were proved by the State than those already brought out on the cross-examination of Webber.

Nor do we think that it was error to permit witnesses Beck and Smith to testify to statements of the accused, 7. EVIDENCE. after the homicide, that he was sane when it was committed. It was admissible for what it was worth, and its value was to be determined by the jury.

It is alleged that the court erred in permitting the witness, Webber, for the State, to testify to statements 8. ——. made by the deceased in relation to certain injuries to her mouth and teeth, as dying declarations.

Whether admissible as such or not, we will not stop to inquire. They related to the assault and killing, which are only formally denied, but really admitted, and were wholly immaterial on any other issue in the case.

As to the testimony of Dr. Schlernitzhauer, his deposition was read for the defense, but it was afterward discovered that it was mutilated, and the court withdrew it from the jury. The witness resided in the State of Illinois, but was sent for by the accused, and the court stated that when he appeared he might be introduced to testify out of time. When he arrived the State was offering evidence, and the circuit attorney objected to his introduction at that time, and by agreement a deposition of the witness read at a former trial, was read as his testimony. We do not find in the record that the defense afterward offered to introduce this witness, but if they had, the reading of the deposition, under the agreement, precluded the defendant from introducing him as a witness afterward.

9. ——: deposition: practice.

We have noticed all the alleged errors relied upon by the prisoner's counsel, and are of the opinion that no error was committed by the learned judge who presided at the trial with such marked ability and impartiality, which would warrant a reversal of the judgment. Without any provocation, defendant called Mrs. Broemser out of her dwelling house and deliberately killed her by shooting her with a pistol. There have been two trials of his case in the criminal court, each of which resulted in his conviction. Two judgments of the criminal court against him have been reversed by this court. Two juries have found against him on his plea of insanity, and declared by their verdicts that he was guilty of deliberate murder, and as no error occurred on the last trial of his cause, the judgment is affirmed, and the sheriff of the city of St. Louis is hereby ordered to execute upon the defendant the sentence of the criminal court of the city of St. Louis, on the 24th day of February, 1882, the time fixed for the execution of that

sentence by that court having passed, and the clerk of the St. Louis criminal court will issue a warrant of execution accordingly. All concur.