THE STATE OF MISSOURI, Respondent, v. JOHN HAYES, Appellant.

June 12, 1883.

1. PRACTICE — IMPERFECT RECORD — CERTIORARI. — If the transcript from the trial court omits a refused instruction, and the appellant does not ask for a *certiorari* or take any step for having the record perfected, but submits his cause to the appellate court upon the record as it stands, he can not demand a reversal because of the incompleteness of the record.

2. —— BILL OF EXCEPTIONS — AFFIDAVITS. — Objections to the rulings of the trial court, or to improper remarks of counsel in argument, will not be considered on appeal, when they are preserved only in affidavits filed with the motion for a new trial, and are not preserved in the bill of exceptions.

3. CRIMINAL LAW — JURISDICTION — CHANGE OF VENUE. — "An act in relation to criminal procedure in the city of St. Louis," etc., approved March 26, 1881, having been declared unconstitutional by the supreme court in *The State* v. *Kring* (74 Mo. 612), an order of the criminal court requesting the judge of the twenty-fifth judicial circuit to hear an application for a change of venue and to try the cause, was void and did not deprive the judge of the criminal court of jurisdiction to vacate the order and dismiss the application.

4. —— EQUALITY OF THE LAWS. — Section 19, of the Revised Statutes, page 1514, does not deny to citizens charged with crime in the city of St. Louis the equal protection of the laws.

APPEAL from the St. Louis Criminal Court.

LAUGHLIN, J.

*Affirmed.*

J. J. McBRIDE and C. O. BISHOP, for the appellant: The appellant is entitled to have his case reviewed upon a complete record. — *The State* v. *Reed*, 67 Mo. 36. The order calling in Judge Burton was proper and lawful under Revised Statutes, section 1877, which repealed all acts inconsistent therewith. — *The State* v. *Kring*, 74 Mo. 612; *The State* v. *Houser*, 28 Mo. 233.

CHARLES P. JOHNSON and HUGO MUENCH, for the respondent: The criminal court was not divested of jurisdiction by Judge Burton's laying the case over for a few

days. — *The State* v. *Kring*, 74 Mo. 622–627; *The State*
v. *Webb*, 74 Mo. 333; *The State* v. *Greenwall*, 72 Mo.
305, 306.

Lewis, P. J., delivered the opinion of the court.

The defendant appeals from a conviction of murder in
the first degree.

The transcript shows that at the close of the testimony
the defendant asked for an instruction, which the court
refused to give. The instruction does not appear, and in
its place is a note by the clerk, thus: "The instruction
referred to can not be found among the records in the case.
It is either lost or mislaid." Because of this omission
from the transcript, the defendant asks for a reversal of
the judgment, on the authority of *The State* v. *Reed* (67
Mo. 36). The opinion in that case says that "the appel-
lant suggested a diminution of the record, stating various
defects, omissions, and incorrect statements in the records
supported by the affidavit of his attorney, and upon his
motion a *certiorari* was awarded. To this a return was
made, stating that the clerk's office had been broken open,
on a night stated, and nearly all the papers in this case
stolen. The record sent up in obedience to the last *certi-
orari* is in fact greatly more defective than the first record,
which was so defective, in our opinion, as to authorize the
writ." That was a very different case from the present.
The defendant, before submitting his cause to the appellate
court, signified his unwillingness to have it heard and
determined on the imperfect record, as it stood. He em-
ployed all the means provided by law for securing a com-
plete record, and the result showed that such a record was
impossible of procurement. Nothing could be presumed
against a party who thus stood upon his rights, waiving
nothing, and the supreme court could not do otherwise
than direct another trial. But in this case the defendant
suggested no diminution and asked for no amendment,

while he voluntarily submitted his case to be heard and determined upon the record as it stood. How can he now be heard to say that the record is insufficient for a proper understanding of the matter at issue? To allow this, would be to assume that the defendant submitted his cause upon condition only that the judgment should be reversed. In civil cases the rule is universal that, after joinder in error, neither party can suggest a diminution or ask for a more perfect record. The reason is, that by joining in error, each party consents that the cause shall be heard upon the record as it stands. In criminal cases no assignment of errors is necessary, but the effect is the same when the cause is regularly submitted upon brief or argument. It is our duty here to decide the cause upon the record submitted to our examination. If we can not learn from this how the trial court decided a particular point, or, in fact, what the point was, we are bound to presume that the court correctly applied the law. The defendant does not attempt to show how, if at all, his case was prejudiced by the refusal of the instruction. For aught that appears, the paper was only temporarily mislaid, and could have been recovered and produced in obedience to a *certiorari*. To forego an application for this effective writ at the proper time, and then ask us to assume that it would have been unavailing, involves a trifling with the court that should not be tolerated in any case.

The defendant complains that the court improperly overruled his challenges of two jurors for cause, and improperly permitted counsel for the state to use unjustifiable language in addressing the jury, in prejudice of the defendant's rights. The answers given by the jurors on *voir dire*, and the remarks made by the state's attorney, are preserved in affidavits filed in support of the motion for a new trial, but do not otherwise appear in the bill of exceptions. We have on several occasions explained the rule, that whatever occurs in presence of the court (not being pertinent to the

record proper) is matter of exception, and must be preserved for review by historical statement in the bill of exceptions, which is authenticated by the signature of the judge who presided at the trial. We can not take the affidavits, by whomsoever made, as conclusive of the facts sworn to, because the better evidence would be, an official narrative from the judge whose business it was to adjudicate upon them. This, of course, does not apply to anything that occurs *in pais*, or beyond the personal observation of the judge. *The State* v. *Zumbunsen*, 13 Mo. App. 592; *The State* v. *Pollard, post.* It is enough to say, that the objections thus presented on behalf of the defendant can not be here considered by us, for the reasons already stated. We may add, however, that, upon a reading of the affidavits, we find in the matters there detailed nothing which, even if properly presented, would make us feel authorized to overrule the action of the criminal court in refusing a new trial.

It appears from the record that the defendant made application to the criminal court, accompanied by his affidavit, for a change of venue, on the ground of prejudice in the inhabitants of the eighth judicial circuit. The court, in conformity with an act of the general assembly then supposed to be in force, entitled "An act in relation to criminal procedure in the city of St. Louis, and to repeal sections 18 and 19 of chapter 2 of the appendix of the Revised Statutes of Missouri, concerning the criminal court," approved March 26, 1881, made an order requesting Hon. Chas. G. Burton, judge of the twenty-fifth judicial circuit, to hear the application for a change of venue, and to try the cause. Judge Burton duly appeared in answer to this call, but the matter was laid over until a later day. Before the time arrived for judicial action by Judge Burton, the case of *The State* v. *Kring* (74 Mo. 612), was decided by the supreme court. In that case it was held that the act of March 26, 1881, was unconstitutional and void. It

resulted from this decision, that the proper procedure for a change of venue, on account of the cause alleged by the defendant, lay in an application to a judge of the St. Louis circuit court. The criminal court therefore vacated its order calling upon Judge Burton, and struck from its files the application for a change of venue. The defendant then applied to a judge of the circuit court, in accordance with section 19 (Rev. Stats. 1509), who denied a change of venue, because he was of opinion that the matters stated in the petition were untrue. The defendant next made application to the criminal court for a jury to be summoned from St. Louis County. This was denied, and the trial proceeded in usual form in the criminal court.

It is insisted for the defendant that there was error in these proceedings. An objection is raised, that the judge of the criminal court "was disqualified to sit in the cause, until the matter raised in the affidavits supporting the application for change of venue had been passed upon by some competent tribunal." There is nothing in this. The first application was, according to The State v. Kring (supra), void for all purposes, and created no disqualification of the judge. The judge did not, in fact, sit on the trial, until after the defendant's application had been passed upon by a judge of the circuit court, who was the competent tribunal. The point of the remaining argument appears to be, that when Judge Burton appeared in answer to the request, and sat to make an order of continuance, he acquired an exclusive jurisdiction over the matter pending, and the order vacating the request was void, because Judge Laughlin, the regular officer, had no jurisdiction to make it. It might be sufficient to say, that both the defendant's application and the court's request being void and unauthorized by the existing law, no jurisdiction was needed in anybody, to prevent their having any valid or effectual operation, whether to divest Judge Laughlin of his accustomed control over the proceedings of his court, or for any other pur-

pose. But the argument seems to rest chiefly upon an idea which strangely confounded the person of the judge with the office whose functions are, for the time being, manifested through his agency. In trans-Atlantic countries official authority or jurisdiction may belong to a person by virtue of heredity, or of titular identification, or other incident, and simply because he is that person. But under our institutions, authority and jurisdiction belong to the office, and not to the man.

The man may be changed or replaced from time to time: the office remains a unit. The man's authority exists only while he is the legally designated exponent of the office. There is an impersonal entity known as "the court," whose authority and jurisdiction are perpetuated through all changes of its personal exponents. Let it be admitted for the present, that Judge Burton was lawfully called to temporary occupancy of the criminal court bench. While there, he was, for the expressed objects of the call, as effectually the custodian and administrator of the court's powers as was the regular incumbent before and after him. But when he withdrew to his own circuit, he carried with him no more of the criminal court's powers or jurisdiction than if he had died or resigned, instead. Those powers and that jurisdiction were no man's personal rights. They remained, as ever, with the court, to be manifested through its succeeding personal exponent, whoever he might be. A court, having lawfully acquired jurisdiction over a cause, may, upon established legal principles, proceed to a final determination. But an application of this rule to any supposed personal rights of the judge, would be repugnant to fundamental law.

We are not able to perceive, and the learned counsel for defendant does not inform us, in what manner section 19 of the act creating the St. Louis criminal court "denies to the citizens of St. Louis city, charged with crime, the equal protection of the laws, with other citizens of this state." That section has been the law in force for

about twenty-eight years, and has so long stood in like relation with the laws upon the same subject, applicable to other parts of the state. We are not aware that it has ever been seriously questioned on the constitutional ground referred to.

Finding no material error in this record, we must affirm the judgment of the criminal court. All the judges concur.